UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

ROLAND K. BROWN,                                  :
                              Plaintiff,          :
                                                  :
            v.                                    :        No. 2:16-cv-01873
                                                  :
GERALD MAY, *WARDEN AT C.F.C.F.*;                 :
BLANCHE CARNEY, *COMMISSIONER*;                   :
JIM KENNEY, *MAYOR OF PHILADELPHIA*,              :
                              Defendants.         :

_____

**O P I N I O N**
**Defendants' Motion for Summary Judgment, ECF No. 37 – Granted in Part**

**Joseph F. Leeson, Jr.**                                      **October 23, 2019**
**United States District Judge**

## I.      INTRODUCTION

Plaintiff Roland Brown has presented evidence that during his term of incarceration

between April 2014 and April 2016 at the Curran-Fromhold Correctional Facility ("CFCF") in

Philadelphia, Pennsylvania,[1] he was triple-celled[2] in violation of his constitutional rights.

Defendants Gerald May, Warden of CFCF; Blanche Carney, Commissioner of the Philadelphia

Prison System ("PPS"); and Jim Kenney, Mayor of the City of Philadelphia, have filed a motion

for summary judgment.  After review, this Court concludes that Commissioner Carney and

Mayor Kenney have shown that they are entitled to judgment as a matter of law as to the

personal capacity claims against them because Brown has failed to provide any evidence

showing that either Defendant was personally involved in any alleged constitutional violation.

---

[1]      Brown is currently incarcerated at the State Correctional Institute in Phoenix,
Pennsylvania.

[2]      Triple-celling occurs when three or more inmates are placed in a cell designed to house
two.  Triple-celling has been used as a method to deal with prison over-crowding.

While Brown has produced evidence showing that Warden May was personally involved, qualified immunity protects Warden May from being sued in his personal capacity because the contours of the constitutional right were not clearly established. Summary judgment is therefore entered in Defendants' favor on all personal-capacity claims. However, based on Brown's evidence that the City had a custom of triple-celling inmates at CFCF under the specific conditions seen here (two-years in length, continuous lockdowns, unsanitary cells, inmate violence, etc.), a jury could conclude that the City is liable and the official capacity claims against Defendants survive the Motion for Summary Judgment.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the

existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Where a party fails to oppose a summary judgment motion, the facts may be deemed undisputed. *See* Fed. R. Civ. P. 56(e)(3); *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). However, the court must still analyze the motion to determine if summary judgment is appropriate, "that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *See Anchorage Assocs.*, 922 F.2d at 175. "Where the moving party does not have the burden of proof on the relevant issues, . . . the district court must determine that the deficiencies in the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law." *Id.* (citing *Celotex Corp.*, 477 U.S. 317).

III.    PROCEDURAL HISTORY

Brown initiated this action against Defendants in their individual and official capacities pursuant to 42 U.S.C. § 1983. On review of the § 1983 complaint and a motion to dismiss, the Court concluded that Brown had alleged sufficient facts to state a claim based on triple-celling but failed to plead sufficient factual details showing each Defendant's personal involvement in the alleged constitutional violation. The Court further determined that "[a]lthough Brown hinted to other possible claims, he failed to allege sufficient facts to support any other independent constitutional claim." *See* Opn. 3 n.3 (citing cases). The initial complaint was dismissed, with leave to amend.

Brown timely filed an Amended Complaint, again asserting a constitutional violation for triple-celling. *See* ECF No. 17. After an Answer to the Amended Complaint was filed, this

Court issued a scheduling Order setting discovery and dispositive motions deadlines. *See* ECF No. 23. The Order explained, *inter alia*, that "any opposition to a motion for summary judgment shall include a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue of fact to be tried" and that "[a]ll facts set forth in the moving party's statement of material facts may be taken by the Court as admitted unless controverted by the opposing party." *See id.* at ¶¶ 3(c), (e).[3]

On April 22, 2019, Defendants filed a Motion for Summary Judgment, including a memorandum of law, Statement of Undisputed Material Facts, and the deposition of Brown. *See* ECF No. 37. Brown did not file a brief in opposition to the motion or to the statement of facts. The Court thereafter issued an Order directing Brown to "file a response to Defendants' Motion for Summary Judgment, *see* ECF No. 37, **no later than July 3, 2019**, or Defendants' Statement of Undisputed Material Facts [would] be accepted as true." *See* Order, ECF No. 38 (emphasis in original). To date, Brown has not filed any opposition to the summary judgment motion.

## IV.   FACTUAL BACKGROUND

Defendants' Statement of Undisputed Material Facts, which is limited to four paragraphs, states:

1. Plaintiff was incarcerated at the Philadelphia Prison System ("PPS") from April 2014-April 2016. *See* Exhibit A, Plaintiff's Deposition Transcript, at 7:18-8:7.

2. Plaintiff has failed to adduce any evidence showing his constitutional rights were violated at PPS.

3. Plaintiff has failed to produce any evidence regarding the policies or customs of the City of Philadelphia.

---

[3]      *See also* E.D. Pa. L.R. 7.1 (providing that "any party opposing the motion shall serve a brief in opposition together with such answer or other response that may be appropriate, within fourteen (14) days after service of the motion and supporting brief [and i]n the absence of timely response, the motion may be granted as uncontested except as provided under Fed.R.Civ.P 56").

4. Plaintiff has no evidence showing that Mayor Kenney, Commissioner Carney, or Warden May were personally involved in violating his constitutional rights, but rather has sued these officials based on a respondeat superior theory of liability. *Id.* at 18:23-20:1.

Stmt Facts, ECF No. 37-1. Defendants attach Brown's deposition to the Statement. *See* Brown Dep., ECF No. 37-2. The Court, consistent with Local and Federal Rules, could deem Defendants' Statement of Undisputed Material Facts undisputed given the repeated notices to Brown that failing to respond to the summary judgment motion might result in the facts being taken as true. However, Defendants' Statement of Undisputed Material Facts contains legal conclusions that the Court is not required to accept as undisputed. *See Doe I v. Evanchick*, 355 F. Supp. 3d 198, 214 n.14 (E.D. Pa. 2019). Further, in light of Brown's *pro se* status, the Court considers all evidence of record that supports his claims. *See* ECF Nos. 7,[4] 17, 28.

There is evidence showing as follows: Brown was incarcerated as a pre-trial detainee at CFCF from April 2014 to April 2016. *See* Brown Dep. 12:6-22; Am. Compl. ¶ 12; Stmt Facts ¶ 1. After the first seven days, during which time Brown was housed in a four-man cell known as a "dorm room," he was transferred to a 7'X10' cell designed for two inmates, but housing three inmates. *See* Brown Dep. 12:12 – 16:1; Am. Compl. ¶ 11.[5] He and other inmates at CFCF were triple-celled for years. *See* Brown Dep. 12:6-22; Dickerson Aff. (stating that from December 14, 2014, through February 11, 2016, he was triple-celled at CFCF), Ex. A, ECF No. 28;

---

[4]     Brown declared the allegations in the Amended Complaint as true and correct under penalty of perjury; therefore, the Amended Complaint is treated as an affidavit for purposes of deciding the summary judgment motion. *See* 28 U.S.C. § 1746; *Parkell v. Danberg*, 833 F.3d 313, 320 n.2 (3d Cir. 2016) (holding that statements made in a verified complaint signed under penalty of perjury are equivalent to statements in an affidavit); *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating the *pro se* plaintiff's statements in his amended complaint, which were made under penalty of perjury, as an affidavit in opposition to summary judgment).
[5]     To the extent that any cited fact is taken solely from the verified Amended Complaint and Defendants denied that statement in their Answer, the fact is considered disputed for purposes of evaluating the summary judgment motion.

Merriweather Aff. (stating that he was triple-celled at CFCF from February 5, 2015, until March 17, 2016), Ex. B, ECF No. 28.  There was limited space in the cells, blue boats on the floor, uncovered toilets, and rodent and insect infestations.  *See* Am. Compl. ¶ 15; Dickerson Aff.  At least once a day, inmates were subjected to lockdowns lasting "an hour or two" and sometimes "the whole day."  *See* Brown Dep. 17:13 – 18:22; Dickerson Aff.  These conditions increased fighting among the inmates, *see* Am. Compl. ¶ 15, and Brown suffered physical injuries in two such altercations as well as psychological trauma, Brown Dep. 11:14-20, 14:21 – 16:12.  Also, the meals provided to inmates at CFCF were un-nutritional and were often served cold or contained burnt food, and Brown experienced bleeding in his stool.  *See* Am. Compl. ¶ 12; Merriweather Aff.  During the period of Brown's incarceration, Warden May[6] routinely walked around inspecting the facilities, personally saw these conditions, and heard complaints directly from inmates about these conditions.  *See* Brown Dep. 20:2 – 21:7; Am. Compl. ¶ 15.  Brown also submitted grievances and sick calls in relation to the conditions.  *See id.* at 10:15 – 12:5; Attachments to Am. Compl., ECF No. 7.  But, inmates were intimidated for complaining or punished for seeking medical treatment.  *See* Dickerson Aff; Brown Dep. 16:8-17.

V.     ANALYSIS

A.     **There are facts from which a jury could find a constitutional violation.**

When a pretrial detainee challenges the conditions of confinement, such as triple-celling, the claim must be analyzed under the Due Process Clause of the Fourteenth Amendment.  *See*

---

[6]     Although Brown testified that he saw both "a female warden" and "a male at a certain point," and that he was not positive if the warden was Gerald May or Louis Giorla, who were each warden during the period of his incarceration, *see* Brown Dep. 20:24 – 21:7, Defendants have offered no evidence regarding the identity of the warden or about the tenure of Warden May.  Moreover, the verified Amended Complaint states that Warden May made routine tours of the facilities and personally witnessed the conditions.  *See* Am. Compl. ¶ 15.  Thus, it cannot be determined from the undisputed facts that the warden Brown saw was not Gerald May.

*Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005). In evaluating the constitutionality of the

conditions of pretrial detention under the Fourteenth Amendment, the court must determine

"whether those conditions amount to punishment of the detainee." *See Bell v. Wolfish*, 441 U.S.

520, 535 (1979). The court, considering the totality of circumstances within an institution, must

determine: (1) whether any legitimate purposes are served by the conditions, and (2) whether the

conditions are rationally related to these purposes. *See Hubbard*, 399 F.3d at 159-60. The

governmental interest in managing overcrowded prisons is legitimate. *See Hubbard v. Taylor*,

538 F.3d 229, 233 (3d Cir. 2008) ("*Hubbard II*"). However, the duration of triple-celling and the

amount of time inmates spend confined to cells could make it plausible that such practices are

not rationally related to managing an overcrowded prison. *See Taylor v. Commonwealth*, No.

17-3369, 2018 U.S. Dist. LEXIS 210370, at *33 (E.D. Pa. Dec. 12, 2018).

Under the circumstances of the instant action, a jury could find that the conditions Brown

experienced are not rationally related to the interest of managing overcrowding at CFCF. *See,*

*e.g. Taylor*, 2018 U.S. Dist. LEXIS 210370, at *8-9 (finding that the inmate stated a Fourteenth

Amendment claim for triple-celling where the plaintiff was subjected to triple-celling for

approximately two years at CFCF, which led to inadequate food, hygiene issues, and excessive

lockdowns); *Pichalskiy v. Nutter*, No. 15-4704, 2016 U.S. Dist. LEXIS 165295, at *5-6 (E.D. Pa.

Nov. 29, 2016) (concluding that the prison conditions, wherein inmates were triple-celled in a

7'X10' cell, in which the third inmate "sleeps on a plastic 'boat' next to the cells [sic] toilet and

is exposed to urine and fecal matter," and subjected to continuous lockdowns, were not rationally

related to a legitimate government purpose). The request for summary judgment on this ground

is therefore denied. *See Duran v. Merline*, 923 F. Supp. 2d 702, 715-16 (D.N.J. 2013)

(concluding that the plaintiff's assertion that, *inter alia*, the prison "was severely overcrowded,

such that its 7 x 12 foot cells, which were designed for one inmate, housed three," he "was forced to sleep and eat his meals next to an open toilet for fifteen months, where he was frequently splashed with urine, feces, and other bodily fluids," and these conditions led to the spread of disease and to inmate-on-inmate violence, survived the summary judgment motion).

**B.      There is no evidence showing that Mayor Kenney and Commissioner Carney were personally involved, but there is evidence showing that Warden May had knowledge and acquiesced in the conditions at CFCF.**

"On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). However, a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). There are two theories of liability under which a supervisory defendant may be personally liable: (1) the defendant-supervisor participated in violating the plaintiff's rights, directed others to violate them, or had knowledge of and acquiesced in his subordinates' violations; and (2) the defendant, in his role as policymaker, acted with deliberate indifference in establishing and maintaining a policy, practice, or custom which directly caused the plaintiff's constitutional harm. *See A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

**1.      Knowledge and Acquiescence Theory**

"Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Actual knowledge cannot be derived solely from grievances filed with the defendant's office. *See Rode*, 845 F.2d at 1208.

Brown does not allege that Mayor Kenney or Commissioner Carney had actual

knowledge of the conditions, nor is there any evidence to suggest their personal participation in

the alleged violations.  As to Warden May, however, Brown testified that the Warden saw the

conditions of confinement while visiting the prison and spoke directly with inmates complaining

about the same.  This evidence shows the personal involvement of Warden May, by knowledge

and acquiescence, in the triple-celling of Brown under the specific conditions he experienced at

CFCF.  *See Lopez v. City of Phila.*, No. 13-6571, 2017 U.S. Dist. LEXIS 103270, at *12-13

(E.D. Pa. July 5, 2017) (concluding that the plaintiff had alleged sufficient facts to show the

warden's personal involvement in the triple-celling violation because the plaintiff spoke

personally with the warden while the warden made rounds through the prison); *Shaw v. Nutter*,

No. 15-1209, 2017 U.S. Dist. LEXIS 31899, at *10-12 (E.D. Pa. Mar. 6, 2017) (determining that

there were sufficient allegations of the warden and commissioner's personal involvement

through knowledge and acquiescence to support the triple-celling claim because the plaintiff

alleged that he sent multiple letters and spoke with them about overcrowding).

### 2.      Deliberate Indifference Theory

When relying on policy or custom pursuant to the second theory of liability, the plaintiff

must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed
> to employ, and show that (2) the existing custom and practice without the identified,
> absent custom or procedure created an unreasonable risk of the ultimate injury, (3)
> the supervisor was aware that this unreasonable risk existed, (4) the supervisor was
> indifferent to the risk; and (5) the underling's violation resulted from the
> supervisor's failure to employ that supervisory practice or procedure.

*Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001).  "[P]roof of the mere existence of

an unlawful policy or custom is not enough to maintain a § 1983 action."  *Bielevicz v. Dubinon*,

915 F.2d 845, 850 (3d Cir. 1990).  A plaintiff must also "specifically identify the acts or

omissions of the supervisors that show deliberate indifference, and suggest to the Court a relationship between the 'identified deficiency' of a policy or custom and the injury suffered." *Cain v. Nutter*, No. 16-1614, 2016 U.S. Dist. LEXIS 166071, at *7 (E.D. Pa. Nov. 30, 2016).

There is evidence in this case showing that for at least two years inmates at CFCF were triple-celled, subjected to continuous lockdowns in their cells, and some inmates had to sleep in blue boats on the floor next to uncovered toilets. A jury could find this evidence establishes a custom. *See Jiminez v. All Am. Rathskeller, Inc*., 503 F.3d 247, 250 (3d Cir. 2007) (holding that a plaintiff "may establish that a course of conduct constitutes a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' that they operate as law" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)); *Vega v. Nutter*, No. 16-1528, 2017 U.S. Dist. LEXIS 138300, at *7 (E.D. Pa. Aug. 25, 2017).

A jury could also conclude, based on evidence that these conditions led to increased fighting among inmates, the cells were unsanitary, food was served poorly, and Brown suffered physical and psychological injuries as a result of the conditions, that this custom created an unreasonable risk of injury.

As stated above, however, there is no evidence to show that either Mayor Kenney or Commissioner Carney was aware of the unreasonable risk and/or was indifferent to that risk. *See Goode v. Nutter*, No. 11-6420, 2017 U.S. Dist. LEXIS 125832, at *11 (E.D. Pa. Aug. 8, 2017) (dismissing the triple-celling claims against the mayor, the commissioner, and the warden because the plaintiff "did not articulate any specific conduct by the Defendants which led to the conditions of which he complained). But, there is such evidence as to Warden May: Brown testified that Warden May personally observed the living conditions and heard complaints directly from inmates.

Consequently, summary judgment is granted in favor of Defendants Kenney and Carney on the personal capacity claims against them for their lack of personal involvement.  Summary judgment is not warranted as to the claim against Warden May in his personal capacity based on lack of personal involvement.  But, for the reasons discussed in the next section, summary judgment is nevertheless granted in Warden May's favor as to the personal-capacity claim because he is entitled to qualified immunity.

**C.      Warden May is entitled to qualified immunity in his personal capacity.**

Because a personal-capacity suit need not establish a connection to a governmental "policy or custom," officials sued in their personal capacities may assert a qualified immunity defense.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Courts apply a two-part test to determine whether an official is entitled to qualified immunity.  *See Saucier v. Katz*, 533 U.S. 194, 199 (2001).  First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Id.* at 201.  Second, was that right clearly established at the time of the official's action?  *See id.*; *Hubbard*, 538 F.3d at 236.  "'Clearly established' for purposes of qualified immunity means that 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *See Wilson v. Layne*, 526 U.S. 603, 614-15 (1999) (explaining that "in the light of pre-existing law the unlawfulness must be apparent" (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))).  "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotations omitted).  "This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued." *Id.* (internal quotations omitted).

For the reasons previously explained, the first part of the *Saucier* test is satisfied: the evidence raises a jury question as to whether Warden May violated Brown's Fourteenth Amendment rights by triple-celling him over an extended period of time under the specific conditions he faced at CFCF during those two years.

As to the second part of the *Saucier* test, in 2008, the Third Circuit Court of Appeals recognized that "our own precedents have never established a right of pretrial detainees to be free from triple-celling or from sleeping on a mattress placed on the floor." *Hubbard*, 538 F.3d at 236. Although there has been additional caselaw on this issue, whether triple-celling amounts to a constitutional violation remains a fact-driven inquiry. This Opinion has cited a number of cases wherein a constitutional violation was pled, but there are also a number of cases in which triple-celling did not rise to the level of a constitutional violation. *See, e.g. Dan v. Curran-Fromhold Corr. Facility*, 2018 U.S. Dist. LEXIS 81107, at *4-5 (E.D. Pa. May 14, 2018) (finding that the allegations - the plaintiff was confined with two other inmates in 8' x 6' cells for approximately nineteen months, there was a bed on the floor next to a toilet, he experienced back pain, and when placed in solitary he was unable to take a shower or to leave his cell for an entire day- failed to state an Eighth Amendment claim for overcrowding); *Mohorcic v. Hogue*, No. 11-575, 2013 U.S. Dist. LEXIS 165282, at *11-12 (W.D. Pa. Nov. 21, 2013) (granting the defendants' motion for summary judgment because despite the splashing of urine on his bedding, the longest period of time the plaintiff spent assigned to a cot was approximately four months and the record was silent as to how much time he had to spend in his cell); *Tapp v. Proto*, 718 F. Supp. 2d 598, 618-19 (E.D. Pa. 2010) (granting summary judgment in favor of the defendants because the inmate was triple-celled for less than six weeks, did not suffer any injuries other than general irritation, and failed to present evidence that he was denied a nutritionally adequate diet).

For these reasons and in the absence of any evidence suggesting that Warden May knowingly

violated the law, *see Hunter*, 502 U.S. at 229, Warden May is entitled to the protections of

qualified immunity as to the personal-capacity claim against him, *see Duran*, 923 F. Supp. 2d at

718-19 (concluding that the defendant was entitled to qualified immunity on the triple-celling

claim because the determination as to whether triple-celling rises to the level of a constitutional

violation is "very fact-specific and required close consideration of all the circumstances" and that

"[a]gainst this backdrop, a reasonable official might not have appreciated that the difference

between the circumstances in *Hubbard II*[7] and those presented here was of constitutional

magnitude").[8]  The Motion for Summary Judgment is therefore granted with respect to the

personal capacity claim against Warden May, based on qualified immunity.

> **D.    The evidence supports an official-capacity suit against Defendants, but punitive damages are not available.**

In contrast to personal-capacity suits, official-capacity suits are generally another way of

pleading an action against an entity of which an officer is an agent.  *See Graham*, 473 U.S. at

165 (citing *Monell*, 436 U.S. at 690 n.55).  In "an official-capacity suit the entity's 'policy or

custom' must have played a part in the violation of federal law:" the entity itself must be "a

'moving force' behind the deprivation."  *Graham*, 473 U.S. at 165-66 (quoting *Polk County v.*

*Dodson*, 454 U.S. 312, 326 (1981); *Monell*, 436 U.S. at 694 (holding that "it is when execution

of a government's policy or custom, whether made by its lawmakers or by those whose edicts or

acts may fairly be said to represent official policy, inflicts the injury that the government as an

entity is responsible under § 1983")).  Thus, "an official-capacity suit is, in all respects other than

---

[7]      *Hubbard v. Taylor*, 538 F.3d 229 (3d Cir. 2008).

[8]      The plaintiff in *Duran* suffered similar conditions of confinement to those seen here,
except that the duration of the conditions was fifteen months, as opposed to the twenty-four
months suffered by Brown.  *See Duran*, 923 F. Supp. 2d at 715-16.

name, to be treated as a suit against the entity." *See Graham*, 473 U.S. at 165.  It is for this reason that an official-capacity "claim does not depend on the personal involvement of the policymaking official in the alleged constitutional violations." *Doe v. Se. Delco Sch. Dist.*, 140 F. Supp. 3d 396, 400-01 (E.D. Pa. 2015).  While a "plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom, . . . [t]his does not mean [] that the responsible decisionmaker must be specifically identified by the plaintiff's evidence." *Bielevicz*, 915 F.2d at 850.  A custom "so permanent and well settled" as to have "the force of law" is ascribable to the municipal decisionmakers. *See Anela v. Wildwood*, 790 F.2d 1063, 1067 and n.3 (3d Cir. 1986) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 n.10 (1986) (holding that a "§ 1983 plaintiff [] may be able to recover from a municipality without adducing evidence of an affirmative decision by policymakers if able to prove that the challenged action was pursuant to a state 'custom or usage'")).

For the reasons discussed in the preceding sections, there is evidence showing that the custom of triple-celling inmates for years at CFCF with continuous lockdowns deprived Brown of his constitutional rights.  Contrary to Defendants' suggestion, the evidence is not limited to Brown's own situation.  Rather, Brown testified that there were other people aside from his cellmates being triple-celled. *See* Brown Dep. 13:20 – 14:2, 15:23 – 16:1.  Brown testified about the conditions "we" were in and stated that some of "us" complained directly to the warden. *See id.* at 17:11-17.  Brown also presented affidavits from two other inmates, each triple-celled at CFCF for more than a year, attesting to the limited space, continuous lockdowns, and unsanitary conditions of the cells. *See* Dickerson Aff.; Merriweather Aff.  Consequently, summary

judgment is denied as to the official capacity claims against all Defendants.[9] *See Burgos v. City of Phila.*, 270 F. Supp. 3d 788, 795-96 (E.D. Pa. 2017) (concluding that the plaintiff stated a *Monell* claim based on his allegations that the City had a policy or custom of housing pre-trial detainees at CFCF in overcrowded and unsanitary cells and that this resulted in a violation of his constitutional rights).

However, "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981). Summary judgment is therefore granted in Defendants' favor as to Brown's request for punitive damages. *See Long v. Bristol Twp.*, No. 10-1069, 2012 U.S. Dist. LEXIS 96591, at *66 (E.D. Pa. July 11, 2012) (granting summary judgment in defendant's favor to the extent the plaintiffs sought punitive damages against the Township).

## VI.    CONCLUSION

Brown's evidence regarding the triple-celling, continuous lockdowns, inmate violence, and unsanitary conditions he experienced while incarcerated as a pretrial detainee for two years at CFCF presents a jury question as to whether his Fourteenth Amendment rights were violated. Further, there is evidence that the City's long-standing practice of triple-celling inmates under these conditions amounted to a custom "so permanent and well settled" to be ascribable to municipal decisionmakers. Summary judgment is therefore denied as to Brown's official-

---

[9]      Although the instant decision is based on the evidence of record in this case only, the Court notes that state court litigation over the unconstitutional conditions in the Philadelphia Prison System began in 1971, *see Jackson v. Hendrick*, No. 2437 February Term, 1971 (Phila.C.C.P. June 22, 1981), and crossed-over to the federal courts in 1982, *see Harris v. City of Phila.*, No. 82-1847, 2000 U.S. Dist. LEXIS 12579, at *27 (E.D. Pa. Aug. 30, 2000). For at least two decades, inmates have been complaining about overcrowding at CFCF. *See also Williams v. City of Phila.*, 270 F.R.D. 208, 212 (E.D. Pa. 2010) (certifying a class action for inmates at CFCF subjected to triple-celling); *Bowers v. City of Phila.*, No. 06-CV-3229, 2007 U.S. Dist. LEXIS 5804, at *7-11 (E.D. Pa. Jan. 25, 2007); *Harris*, 2000 U.S. Dist. LEXIS 12579, at *27.

capacity claims against all Defendants.  Because punitive damages are not available on such claims, however, summary judgment is entered in Defendants' favor as to punitive damages.

Summary judgment is also granted in Defendants' favor on all personal-capacity claims. As to the claims against Mayor Kenney and Commissioner Carney, Brown offered no evidence that either Defendant was personally involved, and judgment is entered for this reason.  As to the personal-capacity claim against Warden May, although Brown presented evidence showing Warden May's personal involvement, the contours of the constitutional right were not clearly established given the fact-specific inquiry needed.  Summary judgment is therefore entered in favor of Warden May as to the personal-capacity claim based on qualified immunity.

A separate order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge